Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

William C. Rava (appearing *pro hac vice*)
Christian W. Marcelo (appearing *pro hac vice*)
WRava@perkinscoie.com
CMarcelo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Nintendo of America Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW STORMAN, an individual, JOHN DOES 1-10, individuals and/or corporations,<br><br>Defendant. | Case No. 2:19-CV-07818-CBM-RAO<br><br>**OPPOSITION TO DEFENDANT MATTHEW STORMAN'S MOTION TO DISMISS**<br><br>Date:      January 14, 2020<br>Time:     10:00 a.m.<br>Ctrm:     8B<br><br>The Honorable Consuelo B. Marshall |

146146112.9

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1
II. BACKGROUND ............................................................................................ 1
    A. Nintendo and Its Business ................................................................... 1
    B. Mr. Storman's Infringing Activities .................................................... 2
III. LEGAL STANDARD .................................................................................... 3
IV. ARGUMENT ................................................................................................. 4
    A. Nintendo Has Stated a Claim for Copyright Infringement ................... 4
    B. Mr. Storman's Affirmative Defenses to Copyright Infringement Fail ........................................................................................................ 6
        1. The First Sale Doctrine Does Not Protect Mr. Storman ............. 7
        2. DMCA Safe Harbor Provisions Do Not Apply to Mr. Storman ................................................................................. 7
    C. Mr. Storman's Affirmative Defense to Trademark Infringement Fails ....................................................................................................... 9
    D. Mr. Storman's Remaining Grounds for Dismissal Are Meritless ...... 10
V. CONCLUSION ............................................................................................ 10


# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
    Case No. C 15-2288 SBA, 2016 WL 9105173, at *5 (N.D. Cal. Oct. 13, 2016) ...................................................................................................... 6

*Branca v. Mann*,
    Case No. CV 11-00584 DDP, 2011 WL 13218028 (C.D. Cal. Apr. 19, 2011) ................................................................................................. 4, 6, 9

*Capitol Records, Inc. v. MP3tunes, LLC*,
    821 F. Supp. 2d 627 (S.D.N.Y. 2011) ............................................................. 8, 9

*Capitol Records, LLC v. ReDigi Inc.*,
    910 F.3d 649 (2d Cir. 2018) ................................................................................ 7

*Cmtys. Actively Living Indep. & Free v. City of Los Angeles*,
    No. CV 09-0287 CBM (RZx), 2009 WL 10676002, at *3 (C.D. Cal. June 1, 2009) .................................................................................................... 3, 9

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ............................................................................ 9

*Delgado v. ILWU-PMA Welfare Plan*,
    Case No. CV 2:18-cv-5539 CBM, 2019 WL 2864427, at *1 (C.D. Cal. Apr. 26, 2019) ............................................................................................ 3

*DFSB Kollective Co. Ltd. v. CJ E & M Am., Inc.*,
    Case No. 2:15-cv-01650-SVW-FFM, 2015 WL 12781211 (C.D. Cal. June 4, 2015) ..................................................................................................... 5

*Epicor Software Corp. v. Alt. Tech. Sols., Inc.*,
    No. SACV 13-00448-CJC(RNBx), 2013 WL 2382262 (C.D. Cal. May 9, 2013) ...................................................................................................... 5

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
    Case No. 2:16-CV-04587-SVW-KS, 2017 WL 2729584 (C.D. Cal. May 1, 2017) ...................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

*HM Elecs., Inc. v. R.F. Techs., Inc.*,
   NO. 12-CV-2884-MMA(WMC), 2013 WL 12073837 (S.D. Cal. Mar. 18, 2013) ................................................................................................ 9

*Lexington Ins. Co v. Silva Trucking, Inc.*,
   No. 2:14-CV-0015 KJM CKD, 2014 WL 1839076 (E.D. Cal. May 7, 2014) ..................................................................................................... 3

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
   922 F.3d 946 (9th Cir. 2019) ..................................................................... 4

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   Case No. 2:16-cv-08962-CAS(KSx), 2017 WL 1960633 (C.D. Cal. May 8, 2017) ................................................................................................ 5

*Safinia v. Voltage Pictures, LLC*,
   No. CV 17-6902-CMB-RAO, 2017 WL 10378500 (C.D. Cal. Dec. 7, 2017) (Marshall, J.) ........................................................................... 3, 4

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
   53 F.3d 1073 (9th Cir. 1995) ..................................................................... 9

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..................................................... 4

**STATUTES**

17 U.S.C. § 106 ............................................................................................... 4

17 U.S.C. § 106(1)-(3) ..................................................................................... 5

17 U.S.C. § 109(a) ....................................................................................... 6, 7

17 U.S.C. § 512 ............................................................................................... 6

17 U.S.C. § 512(c) ....................................................................................... 7, 8

28 U.S.C. § 1331 (b) ..................................................................................... 10

28 U.S.C. § 1338 ........................................................................................... 10

28 U.S.C. § 1367 ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

Copyright Act .................................................................................................. 6, 10

DMCA ........................................................................................................... 7, 8, 9

Lanham Act (15 U.S.C. §§ 1114, 1125(a)) ............................................................ 10

## I. INTRODUCTION

Defendant Matthew Storman owns and operates a website, "www.romuniverse.com," built on brazen and mass scale infringement of Nintendo of America Inc.'s ("Nintendo") intellectual property rights. Compl. (Dkt. No. 1) ¶ 1. Through this website, Mr. Storman reproduces, distributes, monetizes, and offers for download thousands of unauthorized copies of Nintendo's video games. *Id.* Thus, Nintendo brought this action to stop Mr. Storman's rampant infringement and protect Nintendo's intellectual property rights, alleging claims for copyright infringement, trademark infringement, and related causes of action.

Nintendo more than adequately pled all these claims. Mr. Storman's arguments to the contrary—even generously interpreting his Motion (Dkt. No. 25-1), as Nintendo does in this opposition—completely miss the mark. Indeed, to the extent the arguments can be understood, the Motion primarily advances three affirmative defenses that are not properly the subject of a motion to dismiss. Mr. Storman's smattering of passing references to other legal arguments are similarly unavailing.

For these reasons and those more fully articulated below, the Court should deny Mr. Storman's Motion.

## II. BACKGROUND

**A.  Nintendo and Its Business**

Nintendo develops, markets, and distributes electronic video game hardware, software, and related accessories. *Id.* ¶¶ 11–12. Nintendo's innovation in these areas has made it a world-famous brand known for its fun video games and beloved video game characters. Nintendo built its business through creative and financial investment in its video games, products, and intellectual property. *Id.* ¶ 14. As part of this investment, Nintendo owns registered United States copyrights for a variety of Nintendo video games, video game characters, and related works. *Id.* ¶ 17; Ex.

A (Dkt. No. 1-1).  Nintendo also owns registered United States trademarks covering these offerings.  *Id.*; Ex.  B (Dkt. No. 1-2).

**B.     Mr. Storman's Infringing Activities**

Nintendo's popularity has made it a frequent target for intellectual property pirates, including Mr. Storman. *Id.* ¶ 18.  Video game pirates often make unauthorized copies of video games through copies of "read-only memory files" or "read-only memory images," commonly referred to as "ROMs." *Id.* ¶ 19.  These ROMs are often generated by copying the software that constitutes a video game from the read-only memory found in a genuine game cartridge or disc. *Id.*  These copies can be played on unauthorized devices through the use of an "emulator," a piece of software designed to mimic the functionality of a physical video game system. *Id.*  The ROMs can also be played on Nintendo's hardware using hacking techniques. *Id.*

Mr. Storman, and those who operate the website with him, upload and provide such unauthorized copies to the general public.  Mr. Storman's website offers thousands of illegal copies of Nintendo's video games for download. *Id.* ¶ 24.  In 2009, Mr. Storman emailed members of his website that he would be adding new content including ROMs for various Nintendo game systems. *Id.* ¶ 22.  In 2018, when Nintendo was successfully enforcing its intellectual property rights against other pirates, Mr. Storman bragged that he would continue to offer copies of Nintendo's games. *Id.* ¶ 23.  Under Mr. Storman's control and management, the website has attracted hundreds of thousands of viewers each month, leading to hundreds of thousands of downloads of unauthorized copies of Nintendo's video games. *Id.* ¶¶ 25, 33.  Through the website, users can search across a vast library of pirated games to select the particular ROM copy they wish to download. *Id.* ¶¶ 27–31.  In addition to the infringing software code, the website also contains images of the video games' original "box art," many of which include Nintendo's registered copyrights and registered trademarks. *Id.* ¶ 32.  When these unauthorized copies

1  are played, they display counterfeit copies of Nintendo's trademarks at startup and
2  while playing the games. *Id.* ¶¶ 34–35.
3        Mr. Storman directly profits from this infringing activity by allowing users to
4  sign up for "Premium Memberships." *Id.* ¶¶ 22, 37. While non-members are
5  limited to one free download through the website, premium members pay $30 per
6  year to Mr. Storman to download an unlimited number of pirated games, and at
7  higher speeds than non-members. *Id.* ¶ 37.

8                      **III.   LEGAL STANDARD**

9        A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the
10 complaint to state a claim for relief and may be based either on the lack of a
11 cognizable legal theory or the absence of sufficient facts alleged to support that
12 theory. *Cmtys. Actively Living Indep. & Free v. City of Los Angeles*, No. CV 09-
13 0287 CBM (RZx), 2009 WL 10676002, at *3 (C.D. Cal. June 1, 2009) (Marshall,
14 J.). To survive a motion to dismiss, the factual allegations need only be sufficient
15 to state a claim to relief that is "plausible on its face." *Id.* (citing *Bell Atl. Corp. v.
16 Twombly*, 550 U.S. 544, 570 (2007)). All material factual allegations in the
17 complaint are assumed to be true—as well as any reasonable inferences to be drawn
18 from them—and construed in the light most favorable to the plaintiff. *Id.*; *Safinia
19 v. Voltage Pictures, LLC*, No. CV 17-6902-CMB-RAO, 2017 WL 10378500, at *1
20 (C.D. Cal. Dec. 7, 2017) (Marshall, J.); *Delgado v. ILWU-PMA Welfare Plan*, Case
21 No. CV 2:18-cv-5539 CBM, 2019 WL 2864427, at *1 (C.D. Cal. Apr. 26, 2019)
22 (Marshall, J.). In ruling on a motion to dismiss, the court may consider only
23 allegations contained in the pleadings, exhibits attached to the complaint, and
24 matters properly subject to judicial notice. *Cmtys. Actively Living*, 2009 WL
25 10676002, at *3 (citing *Swartz v. KPMG*, 476 F.3d 756, 763 (9th Cir. 2007)).
26       Finally, although courts in the Ninth Circuit are generally more lenient with
27 pro se litigants, courts have no obligation to build substantive arguments for
28 litigants, *see, e.g.*, *Lexington Ins. Co v. Silva Trucking, Inc.*, No. 2:14-CV-0015

KJM CKD, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014) (refusing to consider undeveloped arguments in a motion to dismiss and collecting similar cases holding that undeveloped arguments are waived).

### IV. ARGUMENT

As best the Motion can be understood, Mr. Storman argues that Nintendo has not stated a claim for copyright infringement, raises two copyright and one trademark affirmative defense, and suggests some jurisdictional concerns. These arguments fail for several reasons.

*First*, Nintendo has pled the facts necessary to allege a prima facie copyright infringement claim. At minimum—and Nintendo provides much more—Nintendo properly pleads ownership of valid copyrights and facts supporting Mr. Storman's infringement of those copyrights. *Second*, Mr. Storman's assertion of various affirmative defenses (first sale doctrine and DMCA safe harbor) in a motion to dismiss is both procedurally improper and substantively wrong. *See, e.g.*, *Branca v. Mann*, Case No. CV 11-00584 DDP (PJWx), 2011 WL 13218028, at *2 (C.D. Cal. Apr. 19, 2011) (procedurally improper). *Finally*, to the extent Mr. Storman makes such arguments, his jurisdictional and related musings are without merit, because he does not deny any of Nintendo's material subject matter jurisdiction, personal jurisdiction, or venue allegations.

**A.  Nintendo Has Stated a Claim for Copyright Infringement.**

A plaintiff must plead two elements to state a claim for copyright infringement: (1) ownership of a valid copyright, and (2) that defendant violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1104 (C.D. Cal. 2007); *Safinia*, 2017 WL 10378500, at *1 n.1. A plaintiff properly alleges ownership in the copyrights by providing the title and United States Copyright Office registration numbers. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951–52 (9th Cir. 2019) ("And contrary to Defendants' assertions,

[Plaintiff] was not required to include images . . . , a complete deposit . . . , or registration materials . . . to plausibly allege ownership.").

The exclusive rights granted to copyright holders include reproduction, preparation of derivative works, and distribution. 17 U.S.C. § 106(1)-(3). Courts routinely deny motions to dismiss where a plaintiff sufficiently alleges that the defendant violated these rights in plaintiff's copyrighted software. *Mfg. Automation & Software Sys., Inc. v. Hughes*, Case No. 2:16-cv-08962-CAS(KSx), 2017 WL 1960633, at *11–12 (C.D. Cal. May 8, 2017) (denying motion to dismiss where plaintiff alleged that defendant's software was virtually identical or substantially similar to plaintiff's copyrighted works); *DFSB Kollective Co. Ltd. v. CJ E & M Am., Inc.*, Case No. 2:15-cv-01650-SVW-FFM, 2015 WL 12781211, at *5 (C.D. Cal. June 4, 2015) (denying motion to dismiss where plaintiff alleged that defendant infringed its rights by distributing plaintiff's copyrighted music via its website); *Epicor Software Corp. v. Alt. Tech. Sols., Inc.*, No. SACV 13-00448-CJC(RNBx), 2013 WL 2382262, at *3–4 (C.D. Cal. May 9, 2013) (denying motion to dismiss where plaintiff alleged that defendant copied plaintiff's copyrighted software).

Nintendo has alleged sufficient facts to meet both elements of copyright infringement.

First, Nintendo alleged that it owns valid, registered United States copyrights for various Nintendo video games, video game characters, and related works that have been copied and are available on Mr. Storman's website without Nintendo's authorization. Compl. (Dkt. No. 1) ¶¶ 17, 28, Ex. A. Each work is sufficiently identified in Exhibit A to the Complaint by the title of the work, the copyright registration number, and the registration date. *Id.*, Ex. A (Dkt. No. 1-1).

Second, Nintendo alleged that Mr. Storman violated Nintendo's rights in those copyrighted works. Nintendo alleged that Mr. Storman made unauthorized copies of the Nintendo video games listed in Exhibit A and displays images of the

video games' original box art for which Nintendo also owns copyrights. Compl. ¶¶ 28, 32. Mr. Storman also violated Nintendo's rights by creating ROM copies of Nintendo's copyrighted software which can function on other devices with an emulator. *Id.* ¶¶ 19, 22–24. And Mr. Storman distributed, and continues to distribute, hundreds of thousands of these copies and derivative works through his website, including offering over 3,000 Nintendo games for download. *Id.* ¶¶ 24–33, 36–39.

There should be no question that Nintendo has pled a prima facie case against Mr. Storman for copyright infringement.

**B.     Mr. Storman's Affirmative Defenses to Copyright Infringement Fail.**

Mr. Storman also appears to assert two affirmative defenses to Nintendo's copyright infringement claims: (1) the first sale doctrine (17 U.S.C. § 109(a)), and (2) the Digital Millennium Copyright Act ("DMCA") safe harbor provisions (17 U.S.C. § 512). Mot. at 2–3, 5–7. Neither of these affirmative defenses protect Mr. Storman.

As a procedural matter, a motion to dismiss is an improper stage at which to resolve evidentiary-based affirmative defenses, such as the first sale doctrine and DMCA safe harbor defenses. *Adobe Sys. Inc. v. A & S Elecs., Inc.*, Case No. C 15-2288 SBA, 2016 WL 9105173, at *5 (N.D. Cal. Oct. 13, 2016) ("[A]pplication of the [first sale] doctrine generally is not suitable for resolution on a motion to dismiss, where the facts alleged in the pleading are presumed true."); *Branca,* 2011 WL 13218028, at *2 (denying motion to dismiss where defendant argued it was protected by the DMCA safe harbor provisions because it was an issue of fact and must be more developed). This alone is reason to deny the motion to dismiss on these grounds.

In addition to this fatal procedural defect, these affirmative defenses would not apply to Mr. Storman as a matter of law.

### 1. The First Sale Doctrine Does Not Protect Mr. Storman.

The first sale doctrine does not permit mass distribution of copyrighted works, copying of the copyrighted works or distribution of those copies, or the creation and sale of derivative works based on Nintendo's copyrighted video games. *See* 17 U.S.C. § 109(a) ("the owner of a **particular copy** [of a copyrighted work]. . . **lawfully made** . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of **that copy**.") (emphasis added). Indeed, Mr. Storman's actions fall well outside of the first sale doctrine. The first sale doctrine only allows an owner of a *lawful* copy of the copyrighted work to dispose of *that individual copy*. *Id.* § 106(1)-(2) ("[T]he owner of copyright under this title has the exclusive rights to . . . reproduce the copyrighted work in copies [and] to prepare derivative works based upon the copyrighted work."). Mr. Storman is doing much more than simply distributing any copy of Nintendo's copyrighted video games he many have (if indeed he owns a lawful copy). Instead, he is reproducing the video games, creating derivative works, and distributing hundreds of thousands of those derivative works. Compl. ¶¶ 19, 22–24, 36–39. The first sale doctrine does not permit such blatant infringement. *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 656 (2d Cir. 2018) ("On the other hand, § 109(a) says nothing about the rights holder's control under § 106(1) over *reproduction* of a copy or phonorecord.").

### 2. DMCA Safe Harbor Provisions Do Not Apply to Mr. Storman.

Even if the heavily factual issue of DMCA safe harbor provisions were properly before the Court (it is not), the Complaint sufficiently alleges that Mr. Storman is ineligible for DMCA protection.

Although Mr. Storman does not specify which of the four DMCA safe harbors he claims shelter under, he appears to be seeking protections under 17 U.S.C. § 512(c). *See* Mot. at 2–3, 5, 7, n.9 (discussing "request for removal" and citing 17 U.S.C. § 512(c)(3) notification provisions). Mr. Storman fails to show

that he meets any of the numerous requirements under § 512(c), including without limitation that: (1) the infringing material must be stored by Mr. Storman "at the direction of a user," (2) Mr. Storman must not "receive a financial benefit directly attributable to the infringing activity," (3) Mr. Storman must have designated a DMCA agent during the infringement, and (4) the required information for DMCA notices must have been included on the www.romuniverse.com website.

Moreover, as the Complaint alleges, Mr. Storman and his rampant infringement fall well outside of any DMCA protections.

*First*, Mr. Storman controls and operates a website on which he uploads thousands of copies of infringing video game software, and then organizes, catalogues, and offers those games for download to anyone who wants them and is willing to pay his fee. He also reports the number of times each infringing video game is downloaded from his website. *See* Compl. ¶¶ 22-33. This is independently sufficient to remove Mr. Storman from any DMCA protections. *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 649 (S.D.N.Y. 2011).

*Second*, Mr. Storman receives a financial benefit directly attributable to the infringing material. Compl. ¶¶ 22, 37–39. He charges a premium membership fee to allow users unlimited and faster downloads of the pirated copies of Nintendo's video games. *Id*. This too is an independently sufficient reason that Mr. Storman is not protected by the DMCA safe harbors. *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, Case No. 2:16-CV-04587-SVW-KS, 2017 WL 2729584, at *8 (C.D. Cal. May 1, 2017).

In lieu of demonstrating that he affirmatively qualifies for the DMCA safe harbor—an inappropriate effort at this procedural stage—Mr. Storman appears to assert that Nintendo has somehow granted statutory protections to Mr. Storman by sending a takedown notice regarding his infringement. Mot. at 1, 2, 5.

This is not the case.[1] Whether Nintendo sent a DMCA notice is irrelevant to the question of whether Mr. Storman is eligible for statutory safe harbor protections. A service provider must itself comply with the various safe harbor requirements. *Capitol Records*, 821 F. Supp. 2d at 649 (holding that an individual who uploaded infringing material to his website was not eligible for DMCA safe harbor, even though plaintiffs sent a DMCA takedown notification); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1045 (9th Cir. 2013) (affirming that defendant was not eligible for DMCA safe harbor because it received a direct financial benefit from infringing material, even though plaintiff sent a notice). Nintendo's good faith attempt to enforce its intellectual property rights does not ameliorate Mr. Storman's infringement or cure his deficiencies in qualifying for DMCA safe harbor.

Therefore, although the Complaint need not allege facts to defeat this as-yet-unpled affirmative defense, *see Branca*, 2011 WL 13218028, at *2, Nintendo has nevertheless pled sufficient facts to deny Mr. Storman's motion to dismiss on these grounds.

**C.     Mr. Storman's Affirmative Defense to Trademark Infringement Fails.**

Mr. Storman also seems to attempt to assert a first sale doctrine affirmative defense to Nintendo's trademark infringement claims. Mot. at 3. Just as in the copyright context, this affirmative defense is procedurally improper. *See, e.g.*, *HM Elecs., Inc. v. R.F. Techs., Inc.*, NO. 12-CV-2884-MMA(WMC), 2013 WL 12073837, at *3 (S.D. Cal. Mar. 18, 2013). It is also substantively defective. In trademark law, as in copyright, the first sale doctrine protects resale of only the "original article." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). Mr. Storman's first sale defense substantively fails at least

---

[1] It is also improper to consider the email excerpt offered by Mr. Storman at the motion to dismiss stage. *Cmtys. Actively Living*, 2009 WL 10676002, at *3 (citing *Swartz v. KPMG*, 476 F.3d 756, 763 (9th Cir. 2007)).

because Nintendo's Complaint alleges that he distributed copies and derivative works based on the infringing video games, not the "original articles." Compl. ¶¶ 19, 22–33, 36–39, 41-45. Thus, Mr. Storman is not entitled to dismissal of the trademark-related claims.

### D. Mr. Storman's Remaining Grounds for Dismissal Are Meritless.

Although Mr. Storman's Motion (at 4–5) lists the various grounds for dismissal under Rule 12(b), he does not provide material allegations or arguments in support. As to subject matter jurisdiction, for example, Mr. Storman does not deny, and cannot deny, that Nintendo has alleged claims under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and the Copyright Act (15 U.S.C. § 501 et seq.), and that subject matter jurisdiction is therefore proper (a) as federal question jurisdiction under 28 U.S.C. § 1331, (b) this Court's original jurisdiction over trademark and copyright claims under 28 U.S.C. § 1338, or (c) that supplemental jurisdiction over the remaining state law claims is proper under 28 U.S.C. § 1367. As to personal jurisdiction and venue, Mr. Storman does not deny that he resides in this District nor that a substantial part of the activities giving rise to Nintendo's claims occurred here; to the contrary, on his Motion he claims an address in Covina, California, which is in this District. Mot. at 1. Moreover, Mr. Storman does not suggest that some other jurisdiction or venue is appropriate or more convenient. On this record, the Court need not entertain Mr. Storman's jurisdictional musings.

## V. CONCLUSION

For the foregoing reasons, Nintendo respectfully requests that the Court deny Mr. Storman's motion to dismiss.[2]

---

[2] Nintendo has attempted to generously construe Mr. Storman's arguments and respond to those it understands. To the extent the Court determines that Mr. Storman has raised other cognizable arguments that Nintendo has not addressed, Nintendo respectfully requests it be given the opportunity to provide supplemental briefing to respond to those additional arguments.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED:  December 20, 2019 | **PERKINS COIE LLP** |
| 3 | | By:*/s/ Katherine M. Dugdale* |
| 4 | | Katherine M. Dugdale |
| | | William C. Rava (appearing *pro hac vice*) |
| 5 | | Christian W. Marcelo (appearing *pro hac vice*) |
| 6 | | |
| 7 | | Attorneys for Plaintiff |
| | | NINTENDO OF AMERICA INC. |

-11-