Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

William C. Rava (appearing *pro hac vice*)
Christian W. Marcelo (appearing *pro hac vice*)
WRava@perkinscoie.com
CMarcelo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
Nintendo of America Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW STORMAN, an individual, JOHN DOES 1-10, individuals and/or corporations,<br><br>Defendant. | Case No. 2:19-CV-07818-CBM-RAO<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF NINTENDO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 26, 2021<br>Time:  10:00 a.m.<br>Ctrm:  #8B<br><br>The Honorable Consuelo B. Marshall |

150588214.1

Pursuant to Local Rule 56-1, Plaintiff Nintendo of America Inc. ("Nintendo") hereby submits its Statement of Uncontroverted Facts and Conclusions of Law in support if its Motion for Summary Judgment. These unconverted facts are supported by the Declarations of Jacqueline Knudson ("Knudson Decl."), Alicia Bell ("Bell Decl."), and Christian Marcelo ("Marcelo Decl."), and the attached records.

## UNCONTROVERTED FACTS

1. Nintendo develops, markets, and distributes electronic video game hardware, software, and related accessories. Knudson Decl. ¶ 2.

2. Nintendo's copyrights in and to the works identified in Exhibit A to Nintendo's Complaint (the "Nintendo Copyrights") were registered with the United States Copyright Office. Nintendo has been, and still is, the sole owner of right, title and interest in and to these copyrights. Knudson Decl. ¶ 4; *id*., Exs. 1-2 pp. 5-142; Marcelo Decl., Ex. 1 (Storman Dep.) pp. 66-67 at 63:25-64:11.

3. Nintendo is the owner of valid, federally-registered trademarks in and to the marks identified in Exhibit B to Nintendo's Complaint (the "Nintendo Trademarks"). Nintendo has been, and still is, the sole owner of right, title and interest in and to the trademarks and registrations noted above. Knudson Decl. ¶ 5; *id.*, Ex. 3 pp. 143-221; Marcelo Decl., Ex. 1 (Storman Dep.) p. 67 at 64:13-64:20.

4. Copies of "read-only memory files" or "read-only memory images," commonly referred to as "ROMs," can be taken from the read-only memory found in a genuine game cartridge or disc. Such copies can be played on unauthorized devices, such as personal computers, through the use of an "emulator," a piece of software designed to mimic the functionality of a physical video game system. Pirated ROMs can also be played on Nintendo hardware using hacking techniques. Knudson Decl. ¶ 6; Marcelo Decl., Ex. 1 (Storman Dep.) pp. 29-31 at 26:12-28:1.

5. In or around 2009, Mr. Storman purchased the domain name and website located at NDSUniverse.com ("NDSUniverse"). At that time,

1  NDSUniverse distributed pirated ROMs of games for Nintendo's DS video game
2  console. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 15-16 at 12:25-13:6.

3      6.    In or around 2009, Mr. Storman purchased the domain name
4  RomUniverse.com, repurposed the NDSUniverse website into a new website
5  located at RomUniverse.com, and redirected traffic from NDSUniverse to the
6  website associated with RomUniverse.com ("RomUniverse"). Marcelo Decl., Ex. 1
7  (Storman Dep.) pp. 16-18 at 13:10-15:13.

8      7.    Since he purchased the RomUniverse domain, Mr. Storman has been
9  and currently is the sole owner of, and solely responsible for the content at,
10  RomUniverse. Marcelo Decl., Ex. 1 (Storman Dep.) p. 18 at 15:21-25.

11      8.    Through RomUniverse, Mr. Storman distributed pirated ROMs of
12  Nintendo video games. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 30-32 at 27:24-
13  29:1; Bell Decl. ¶ 8, Ex. 2, p. 8.

14      9.    RomUniverse offered for download and distributed pirated ROMs of
15  thousands of Nintendo games, including pirated ROMs of games for the Super
16  Nintendo Entertainment System (Super NES), Nintendo Entertainment System
17  (NES), Game Boy, Game Boy Advance, Game Boy Color, Nintendo 64, Nintendo
18  DS, Nintendo 3DS, Wii, and the Nintendo Switch. Marcelo Decl., Ex. 1 (Storman
19  Dep.) pp. 30-32 at 27:24-29:1; Marcelo Decl., Ex. 2 (screenshot of RomUniverse)
20  pp.106-109.

21      10.    Mr. Storman himself uploaded numerous pirated ROMs to
22  RomUniverse, which he originally found on other websites distributing pirated
23  content. Many of the ROMs Mr. Storman uploaded were identified as ROMs of
24  Nintendo games, and he believed them to be such before uploading them to
25  RomUniverse. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 39-42 at 36:20-39:18.

26      11.    On several occasions, Mr. Storman responded to user requests by
27  locating specific pirated ROMs and uploading them to RomUniverse. Marcelo
28  Decl., Ex. 1 (Storman Dep.) pp. 90-92 at 87:25-89:4; Knudson Decl., Ex. 7, p. 225.

150588214.1

12. Mr. Storman had the ability and authority to control the actions of RomUniverse administrators in connection with the content and functionality of RomUniverse. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 43-44 at 40:19-41:7; pp. 98-100 at 95:9-97:14.

13. Mr. Storman owned and had sole control of the "Admin" account for RomUniverse on Discord.com, under the account "Admin@romuniverse.com." Marcelo Decl., Ex. 1 (Storman Dep.) pp. 79-80 at 76:10-77:10.

14. In September 2019, data on RomUniverse indicated that it had available for download pirated ROMs of more than 3000 Nintendo 3DS games and pirated ROMs of 247 Nintendo Switch games, and that it had supported and facilitated more than 400,000 downloads of pirated ROMs of Nintendo 3DS games and 200,000 downloads of pirated ROMs of Nintendo Switch games. Marcelo Decl., Ex. 3 pp.114-16.

15. Mr. Storman offered Premium Memberships for RomUniverse and charged between $28 and $60 for either annual or lifetime Premium Memberships. Since 2016, Mr. Storman received at least $77,700 in payments for Premium Memberships. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 51-52 at 48:3-49:17; *Id.*, Ex. 8 (Interrogatory Response No. 1) p. 140; *Id.*, Ex. 9 p. 151.

16. Non-paying users of RomUniverse were limited to one free download, while Premium Members could download an unlimited number of pirated ROMs at higher speeds than non-paying users. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 44-45 at 41:8-42:13.

17. Mr. Storman promoted RomUniverse's Premium Memberships by highlighting RomUniverse's vast array of pirated ROMs for Nintendo games, noting that RomUniverse offered "1000s of game roms … [i]ncluding Switch, Wii, 3DS/DS, GBA and more." Marcelo Decl., Ex. 1 (Storman Dep.) pp. 56-57 at 53:18-54:17; Marcelo Decl., Ex. 16, pp. 222-23.

150588214.1

18. On June 24, 2019, Mr. Storman posted a Tweet stating: "Hey you. You know we have Nintendo Switch Scene Roms. They're uploaded when they are dumped. Check them out." Marcelo Decl., Ex. 10, p. 159; Marcelo Decl., Ex. 1 (Storman Dep.) pp. 34-36 at 31:2-33:17.

19. Mr. Storman provided notices through a third-party service, Discord, to notify RomUniverse users when new, pirated content was made available and boasted of RomUniverse's vast catalogue of pirated ROMs of Nintendo games. Marcelo Decl., Ex. 1 (Storman Dep.) pp. 76-77 at 73:32-74:2; Knudson Decl., Ex.4 p. 222.

20. In 2016, RomUniverse had over 200,000 users and nearly 2 million pageviews. In 2019, RomUniverse had over 600,000 users and over 7 million pageviews. Marcelo Decl., Exs. 11-12 (website visitor metrics) pp. 161-162.

21. Nintendo's Complaint lists 37 Nintendo games to which it owns valid, enforceable copyrights (the "Nintendo Games"), as well as the box art corresponding with 12 of those games (the "Nintendo Box Art"). Compl. Ex. A; Knudson Decl., Exs. 1-2, pp. 5-142.

22. Pirated ROMs of each of the Nintendo Games (the "Infringing ROMs") were available for download from RomUniverse. Bell Decl., ¶¶ 7-10; *id.*, Ex. 2, p. 8.

23. RomUniverse identified and categorized each of the Infringing ROMs using one or more of the Nintendo Trademarks. Bell Decl., Ex. 3 (screenshots of download pages) pp. 9-142; Marcelo Decl., Ex. 2 pp. 104-111; Knudson Decl., Ex. 5 (Discord screenshot) p. 223; *id.* Ex. 3 (trademark registrations) pp. 143-221.

24. The download page on RomUniverse for 12 of the Infringing ROMs used the Nintendo Box Art to promote the Infringing ROM. Bell Decl., Ex. 3, pp. 17, 25, 29, 33, 37, 41, 45, 53, 58, 66, 131, and 138; Knudson Decl. ¶ 7.

150588214.1

25. All but three of the Infringing ROMs downloaded from RomUniverse were functional copies of the games listed in Exhibit A to Nintendo's Complaint at the time they were downloaded by Ms. Bell. Bell Decl., Ex. 2, pp. 8.

26. When launched, the title page for most of the Infringing ROMs displayed one or more of the Nintendo Trademarks. Bell Decl., Ex. 3, pp. 9-142.

27. According to data found on RomUniverse, at or around the time Nintendo completed its investigation, approximately 50,000 copies of the Infringing ROMs had been downloaded through RomUniverse. Bell Decl., Ex. 3, pp. 9-142.

28. After Nintendo filed its Complaint, RomUniverse remained active for over a year. During this time, Mr. Storman used RomUniverse to advertise his attempt to crowdfund his legal defense. Marcelo Decl., Ex. 7, p. 225; Knudson Decl. ¶ 7.

29. On or around September 18, 2020, a pirated ROM of Nintendo's Super Mario 3D All-Stars video game was uploaded to RomUniverse and RomUniverse users were notified of this new content. Knudson Decl. ¶ 7.

30. On or around November 9, 2018, Mr. Storman received notices identifying at least two ROMs found on RomUniverse as infringing Nintendo's copyrights ("Splatoon 2 (Switch)" and "Super Mario Odyssey (Switch)"), but had not removed those games from RomUniverse at the time Nintendo filed its Complaint. Marcelo Decl., Ex. 1 pp. 70-71 at 67:15-68:25; Marcelo Decl., Exs. 17-18 pp. 225-26; Bell Decl., Ex. 2 p. 8 at 14-15.

31. On June 23, 2020, Nintendo reached out to Mr. Storman concerning three categories of documents he failed to produce in response to Nintendo's discovery requests: (1) his tax information, (2) data regarding the number of downloads of the Infringing ROMs, and (3) communications regarding RomUniverse and this litigation. A month later, Mr. Storman responded that he

150588214.1

1  had a medical issue and requested an extension of the case schedule to allow him to
2  recover. Marcelo Decl., ¶ 2, *id.*, Ex. 13, pp. 188-190.

3       32.    On August 5, 2020, on the parties' stipulation, the Court extended the
4  case schedule and further ordered the parties to participate in the Informal
5  Discovery Conference procedure ("IDC"), including a preceding substantive meet-
6  and-confer by no later than September 25, 2020. Dkt. No. 42.

7       33.    Nintendo attempted to contact Mr. Storman on numerous occasions
8  after the case extension, including by email and via telephone on August 17,
9  August 21, August 28, September 4, and September 11, 2020. Marcelo Decl., ¶ 2;
10  *id.*, Ex. 13, pp. 188-190. Mr. Storman did not respond. *Id*.

11       34.    Mr. Storman did not participate in a meet-and-confer with Nintendo by
12  the Court-ordered deadline of September 25, 2020. Marcelo Decl., ¶ 2.

13       35.    On September 25, 2020, the parties participated in an IDC regarding
14  these discovery disputes. At the conclusion of the hearing, Magistrate Judge Oliver
15  ordered Mr. Storman to produce the requested documents by no later than October
16  5, 2020 and warned him that his failure to comply with his discovery obligations
17  could result in sanctions. Dkt. No. 45 ("September 25 Order").

18       36.    On September 30, 2020, the parties conferred about the status of Mr.
19  Storman's compliance with his discovery obligations and the Court order and Mr.
20  Storman represented that he was on track to produce documents responsive to each
21  of the three document categories, and that, specifically, the data regarding the
22  downloads was available to him. Marcelo Decl. ¶ 3; *id.* Ex. 14 pp. 217-19; *id.* Ex.
23  1, p. 81 at 78:7-19.

24       37.    Mr. Storman did not produce any responsive documents regarding
25  download data or communications by the October 5 deadline. Marcelo Decl., ¶ 3;
26  *id.*, Ex. 15, p. 220.

27       38.    On October 7, 2020, Mr. Storman informed Nintendo that he no longer
28  had access to (a) his communications sent and received through Discord regarding

150588214.1

Nintendo and RomUniverse and (b) the data on his website regarding the number of downloads of the Infringing ROMs. Marcelo Decl., Ex. 15, p. 220.

39. The lost Discord communications included private messages regarding Nintendo, this litigation, and the website generally. Marcelo Decl., Ex. 1 pp. 22-26 at 19:11-20:3; 21:13-23:13.

## CONCLUSIONS OF LAW

1. Mr. Storman infringed the Nintendo Copyrights, which are owned by Nintendo, through his upload and distribution of the Infringing ROMs, and use of the Nintendo Box Art in connection with these actions. His infringement was willful.

2. Mr. Storman is directly, contributorily and vicariously liable for infringing the Nintendo Copyrights identified in Exhibit A of Nintendo's Complaint under federal copyright laws. 17 U.S.C. § 101 *et seq*.

3. Mr. Storman infringed the Nintendo Trademarks, which are owned by Nintendo, through his use of identical copies of the Nintendo Trademarks in connection with the upload and distribution of the Infringing ROMs, and through the distribution of the Nintendo Trademarks in connection with the Infringing ROMs. His infringement was willful.

4. Mr. Storman is liable for infringing the Nintendo Trademarks identified in Exhibit B of Nintendo's Complaint by making use of counterfeit marks. 15 U.S.C. § 1114; 15 U.S.C. § 1125 *et seq*.

5. Mr. Storman's infringement was knowing, willful and deliberate making this an exception case within the meaning of 15 U.S.C. § 1117.

6. Mr. Storman's actions also constitute unlawful business practices in violation of California Business and Professions code § 17200 *et seq*.

7. Nintendo is awarded $11,200,000 in statutory damages against Mr. Storman under the Lanham Act. 15 U.S.C. § 1117.

8. Nintendo is awarded $4,410,000 in statutory damages against Mr. Storman under the Copyright Act. 17 U.S.C. § 504.

9. The likelihood of confusion that existed in this instance by virtue of Mr. Storman's distribution of the Infringing ROMs in interstate commerce, and the threat of continued infringement absent a permanent injunction is an appropriate predicate upon which to base permanent injunctive relief against the unauthorized

use, display, reproduction, replication and/or distribution by Mr. Storman of Nintendo's intellectual property.

10. Under the Copyright Act and the Lanham Act, full costs and reasonable attorneys' fees may be awarded to the prevailing party. 17 U.S.C. § 505; 15 U.S.C. § 1117(a). Nintendo is entitled to an award of attorneys' fees and costs, in an amount to be determined after filing upon Nintendo's Motion of Summary Judgment.

DATED: December 29, 2020        **PERKINS COIE LLP**

By:*/s/ Katherine M. Dugdale*
   Katherine M. Dugdale
   William C. Rava (appearing *pro hac vice*)
   Christian W. Marcelo (appearing *pro hac vice*)

Attorneys for Plaintiff
NINTENDO OF AMERICA INC.

150588214.1