Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

William C. Rava (appearing *pro hac vice*)
Christian W. Marcelo (appearing *pro hac vice*)
WRava@perkinscoie.com
CMarcelo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Nintendo of America Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW STORMAN, an individual, JOHN DOES 1-10, individuals and/or corporations,<br><br>Defendant. | Case No. 2:19-CV-07818-CBM-RAO<br><br>**NINTENDO'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 23, 2021<br>Time: 10:00 a.m.<br>Ctrm: #8B<br><br>The Honorable Consuelo B. Marshall |

151641835.4

# TABLE OF CONTENTS

|      |                                                                                                                                                  | Page |
|------|--------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                                                                                     | 1    |
| II.  | ARGUMENT                                                                                                                                         | 1    |
|      | A. Mr. Storman Does Not Dispute That He Distributed Infringing Copies of Nintendo's Videogames, Incorporating Nintendo's Trademarks              | 2    |
|      | B. Mr. Storman Is Liable for Secondary Copyright Infringement                                                                                    | 4    |
|      | C. The DMCA Safe Harbor Provisions Are Inapplicable                                                                                              | 6    |
|      | D. Mr. Storman Does Not Dispute Nintendo's Entitlement to Statutory Damages, Attorney's Fees and a Permanent Injunction                          | 7    |
|      | E. Mr. Storman Does Not Dispute His Spoliation Or Address His Counterclaims                                                                      | 9    |
| III. | CONCLUSION                                                                                                                                       | 9    |

151641835.4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........................................................................... 5, 6

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ................................................................................ 3

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .................................................................................... 4

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ................................................................................ 2

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) .................................................................................. 1

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ......................................................................... 1, 2, 3

*Moroccanoil, Inc. v. Groupon, Inc.*,
278 F. Supp. 3d 1157 (C.D. Cal. 2017) .................................................................. 4

*Philip Morris USA Inc. v. Liu*,
489 F. Supp. 2d 1119 (C.D. Cal. 2007) .................................................................. 8

*Sega Enters Ltd. v. MAPHIA*,
948 F. Supp. 923 (N.D. Cal. 1996) ............................................................. 3, 4, 5, 9

*Sega Enters Ltd. v. Sabella*,
No. C 93-04260 CW, 1996 WL 780560 (N.D. Cal. Dec. 18, 1996) ...................... 5

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) .................................................................................. 8

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ............................................................................ 2, 4

**STATUTES**

15 U.S.C. §1117(b) .................................................................................................. 8

151641835.4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

17 U.S.C. § 512(c) .................................................................................................. 7

**RULES**

Fed. R. Civ. P. 56(c) ............................................................................................... 1

## I.   INTRODUCTION

Mr. Storman's opposition to Nintendo's summary judgment motion falls far short of carrying his burden. At bottom, he offers nothing more than a short list of twelve "disputed facts," most of which appear intended to assign some responsibility to unidentified third-parties for the massive infringement to which he himself has expressly admitted. He does not offer any evidence in support of these "facts;" does not attempt to explain how they are material; and, in any event, cannot avoid the conclusion that these "facts" can and should be disregarded because they contradict his sworn deposition testimony and the only evidence in the record.

Mr. Storman's opposition is also notable because it does not dispute Nintendo's legal arguments, and largely fails to even address those arguments. He does not dispute his infringement of Nintendo's trademarks and does not resist Nintendo's request for statutory damages, attorney's fees, a permanent injunction, or spoliation sanctions. Where he fails to dispute or address Nintendo's arguments, those should be accepted as true and Nintendo's requested relief granted.

Mr. Storman needed to provide more than bald assertions to avoid summary judgment. Despite multiple opportunities and additional time, he has not done so. Nintendo's motion should be granted.

## II.   ARGUMENT

Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although courts view the evidence in the light most favorable to the party opposing summary judgment, "bald assertions or a mere scintilla of evidence . . . are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). The non-moving party "must produce at least some significant, probative evidence . . . to create a genuine issue of material fact." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) (internal quotation marks and citation

151641835.4

omitted). "[C]onclusory, self-serving affidavit[s], lacking detailed facts and any supporting evidence, are insufficient to create a genuine issue of material fact." *Id.*; *see also FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010).

The Ninth Circuit also applies the "sham affidavit" rule holding that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). "This sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (internal quotation marks and citations omitted).

Here, Mr. Storman asserts that there are material facts in dispute but fails to provide *any* evidence in support. Even construing Mr. Storman's "Statement of Undisputed Facts" as a sworn declaration, his representations do not create a dispute of material facts, are largely contradicted by his sworn deposition testimony and should be disregarded. Mr. Storman does not deny, however, that the files hosted on his website are infringing copies of Nintendo's videogames, that those files were downloaded by users of his website, and that he profited from such infringement. Nor does he address his infringement of Nintendo's trademarks or his spoliation, tacitly conceding those claims. As Mr. Storman has not raised any issues of fact, Nintendo is entitled to summary judgment on each of its claims.

**A.   Mr. Storman Does Not Dispute That He Distributed Infringing Copies of Nintendo's Videogames, Incorporating Nintendo's Trademarks**

As explained in detail in Nintendo's motion, Mr. Storman used RomUniverse to distribute unauthorized copies of thousands of Nintendo's videogames by copying and distributing the "read-only memory files" (referred to as "ROMs") of Nintendo's videogames. During its investigation, Nintendo downloaded 37 of these ROMs (the "Infringing ROMs") and confirmed that all but three were functional

1  copies of Nintendo's copyrighted videogames.  Dkt. No. 52-3 ("Bell Decl."), Ex. 2,
2  pp.8.[1]  Nintendo also uncovered extensive use of its trademarks both throughout the
3  RomUniverse website and incorporated in the gameplay of the Infringing ROMs.
4  *Id*., Ex. 3; Dkt. No. 52-2 ("Marcelo Decl."), Ex. 2 pp.104-111.  Similarly,
5  Mr. Storman displayed copies of Nintendo's copyrighted videogame box art to
6  identify and promote the Infringing ROMs.  Bell Decl., Ex. 3.  Mr. Storman offers
7  no evidence to refute any of these facts.[2]

8      Mr. Storman also did not dispute that Nintendo owns valid copyrights in the
9  relevant works (the "Nintendo Copyrights")[3] and valid trademark registrations for
10 the relevant marks (the "Nintendo Trademarks")[4].  Storman Dep. at 63:25-64:20.

11     Having uploaded and distributed infringing copies of the Nintendo Games,
12 and displayed the Nintendo Box Art to promote these pirated game copies, Mr.
13 Storman infringed Nintendo's exclusive rights under the Copyright Act and is liable
14 as a matter of law for copyright infringement.  *Columbia Pictures Indus., Inc. v.*
15 *Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading
16 copyrighted material are infringing acts.  The former violates the copyright holder's
17 right to distribution, the latter the right to reproduction.").

18     Likewise, Mr. Storman's undisputed use of the Nintendo Trademarks, both
19 throughout RomUniverse and as incorporated in the Infringing ROMs, infringed
20 Nintendo's trademark rights as a matter of law.  *Sega Enters Ltd. v. MAPHIA*, 948
21 F. Supp. 923, 938 (N.D. Cal. 1996).  For these same reasons, summary judgement
22 should be granted regarding Nintendo's unfair competition claim under California

---

[1] While Mr. Storman alleges that he never "verif[ied] the content" of the ROMs on RomUniverse, he does not deny the findings of Nintendo's investigation including that the ROMs were functional copies of Nintendo's videogames.  Marcelo Decl., Ex. 1 ("Storman Dep.") at 89:5-8.

[2] Mr. Stroman includes a single, unadorned sentence in his brief denying "[a]ny and all other allegations not expressly admitted herein[.]"  Such conclusory language, offered to rebut numerous unspecified facts and provided without any supporting evidence is insufficient to create a dispute of fact.  *See Hexcel Corp.*, 681 F.3d at 1063.

[3] Dkt. No. 52-5 (Knudson Decl.), Exs. 1-2 (copyright registrations) pp. 5-142.

[4] *Id*., Ex. 3 (trademark registrations) pp. 143-221.

151641835.4

law. *See Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017).

Mr. Storman's sole assertion relevant to his liability for copyright infringement is his denial that he "uploaded any files to [RomUniverse.]" Opp. at 4. That contention, however, is directly contradicted by his sworn deposition testimony. Under oath, Mr. Storman conceded that he uploaded numerous ROMs to RomUniverse. Storman Dep. at 36:20-39:18 ("I would say that I have uploaded files, yes."). In fact, Mr. Storman admits that in response to user requests to add specific, pirated ROMs to RomUniverse, he has found *and uploaded* those ROMs to RomUniverse, including ROMs of Nintendo's videogames. *Id.* at 87:25-88:24.

Mr. Storman's recent change in story to contradict his previous sworn testimony cannot create a dispute of material fact. *Yeager*, 693 F.3d at 1080. Moreover, the uncontroverted evidence confirms that Mr. Storman uploaded pirated ROMs of Nintendo's games to RomUniverse. Knudson Decl., Ex. 7 p. 225 ("I'm getting ready to upload a huge number of NSW files").[5,6] Mr. Storman has not and cannot provide any evidence to refute Nintendo's copyright infringement claims, and summary judgment should be granted in Nintendo's favor.

**B.     Mr. Storman Is Liable for Secondary Copyright Infringement**

Having induced, caused or materially contributed to the infringing activity of users of RomUniverse, Mr. Storman is liable for contributory copyright infringement. *Sega v. MAPHIA*, 948 F. Supp. at 932. And as he had the right and ability to supervise the infringing activity and profited from such activity, he is also liable for vicarious copyright infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). Mr. Storman has conceded each of the elements

---

[5] "NSW" is used as shorthand for "Nintendo Switch."
[6] Mr. Storman concedes that he cannot recall if he personally uploaded the Infringing ROMs or directed one of his administrators to do so. Storman Dep. at 38:5-15; 87:20-89:4.

-4-

of secondary copyright infringement. Indeed, he admitted, among other relevant facts, that he:

- is the sole owner of RomUniverse (Storman Dep. at 15:21-25);
- had the ability and authority to control the content made available on RomUniverse by his website administrators (Storman Dep. at 95:9-97:14);
- had "control of every aspect of the website and its accessibility" (Opp. at 4; *see also* Storman Dep. at 40:19-41:7; 95:9-97:14);
- uploaded pirated ROMs of Nintendo videogames to RomUniverse at the request of RomUniverse users (Storman Dep. at 87:25-88:24);
- promoted RomUniverse by advertising the availability of the Infringing ROMs and other pirated ROMs of Nintendo videogames (Storman Dep. at 53:18-54:17; Marcelo Decl., Ex. 16, pp. 222-23); and
- directly profited from his infringement through the sale of Premium Memberships, which allowed members to download multiple files at the same time, and at faster speeds that non-paying users (Storman Dep. at 41:8-42:13).

Additionally, the evidence shows that Mr. Storman helped organize the ROMs offered by RomUniverse in order to make it "easier for the public to find specific ROMs[.]" Knudson Decl., Ex. 5 p. 223. Thus, Mr. Storman is contributorily and vicariously liable for infringing Nintendo's copyrighted works. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021-24 (9th Cir. 2001) (finding contributory infringement where defendant knew of availability of infringing files, assisted in accessing the files, and failed to block access to the files); *Sega v. MAPHIA*, 948 F. Supp. at 932-33; *Sega Enters Ltd. v. Sabella*, No. C 93-04260 CW, 1996 WL 780560, at *8 (N.D. Cal. Dec. 18, 1996).

While conceding facts sufficient to establish the necessary elements of secondary infringement, Mr. Storman attempts to shift the blame to unnamed

-5-

151641835.4

1  administrators of the website claiming that he "is not *solely* responsible for the
2  content that exists on RomUniverse." Opp. at 4 (emphasis added). He explains
3  that *both* "[Mr. Storman] and other admins had control of every aspect of the
4  website and accessibility." *Id*. Mr. Storman once again provides no evidence to
5  support these claims. Yet, even if his assertions are assumed to be true, they do
6  nothing to absolve him of liability. Indeed, his concession that he had "control of
7  every aspect of the website" supports Nintendo's claims for secondary
8  infringement. At most, Mr. Storman presents an argument that his administrators
9  are—along with himself—jointly liable for infringing Nintendo's copyrights. That
10 does not create a material issue of fact as to Mr. Storman's liability.

11      Moreover, in addition to having control over the content on RomUniverse,
12 Mr. Storman also had control over the relevant actions of the RomUniverse
13 administrators. For instance, he had the ability to prevent administrators from
14 adding ROMs to RomUniverse, control whether the administrator could edit the
15 website, and track and review any changes made by his administrators. Storman
16 Dep. at 95:9-97:14. Thus, the overwhelming evidence demonstrates that Mr.
17 Storman had the right and ability to supervise the infringing activity.

18      As Mr. Storman raises no dispute of material facts regarding his liability for
19 secondary infringement, summary judgment on these claims should be granted.

20 **C.    The DMCA Safe Harbor Provisions Are Inapplicable**

21      In his brief, Mr. Storman provides a passing reference to RomUniverse
22 acting as a "service provider." Opp. at 4. He does not support this reference with
23 any evidence, case law, or other authority. Nor does he provide any explanation for
24 how this assertion affects any of Nintendo's claims or his defenses. Given the lack
25 of specificity or evidence presented by Mr. Storman in connection with this
26 reference, it should be given no weight. However, if considered, and to the extent
27 this reference can be read as Mr. Storman asserting that his actions fall under the
28 protections available under 17 U.S.C. § 512(c), his argument should be rejected.

Indeed, Mr. Storman does not meet any of the numerous requirements under § 512(c), including without limitation that: (1) the infringing material was stored by Mr. Storman "at the direction of a user," (2) Mr. Storman did not "receive a financial benefit directly attributable to the infringing activity," (3) Mr. Storman had a designated DMCA agent during the infringement, and (4) the required information for DMCA notices was displayed on the RomUniverse website.

*First*, the Infringing ROMs were not stored on RomUniverse by users of the website, but rather were uploaded by Mr. Storman and his administrators. Storman Dep. at 36:17-39:18. *Second,* Mr. Storman directly profited from his infringement, selling Premium Memberships for RomUniverse which provided the members with benefits such as downloading more pirated ROMs at faster speeds. *Id*. at 41:8-42:13. *Third*, Mr. Storman did not have a designated DMCA agent during the course of the infringement nor did the RomUniverse website contain any information for DMCA notices at the relevant time. *Id.* at 65:1-5.

Thus, any affirmative defense based on § 512 that Mr. Storman may be attempting to assert should be procedurally and substantively denied.

### D. Mr. Storman Does Not Dispute Nintendo's Entitlement to Statutory Damages, Attorney's Fees and a Permanent Injunction

Mr. Storman does not dispute that Nintendo is entitled to statutory damages or attorney's fees and costs under the Copyright Act and Lanham Act. Nor does he dispute that Nintendo is entitled to a permanent injunction. And while he "denies and disputes that he knowingly and willingly [sic] distributed pirated ROMs of Nintendo video games[,]" he once again provides no evidence to support his claim. Opp. at 4. Such conclusory, unsupported claims are insufficient to rebut the undisputed and overwhelming evidence presented by Nintendo which demonstrates that Mr. Storman's infringement was willful.

"[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the

151641835.4

1  defendant's actions were the result of reckless disregard for, or willful blindness to,
2  the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d
3  980, 991 (9th Cir. 2017).  Similarly, in order to establish the level of willfulness
4  necessary to warrant enhanced damages under the Lanham Act, a plaintiff need
5  only show that the defendant acted with "willful blindness" to the trademark
6  holder's rights.  15 U.S.C. §1117(b); *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d
7  1119, 1123 (C.D. Cal. 2007).

8        As discussed in detail in Nintendo's motion, Mr. Storman's infringement was
9  undoubtedly willful.  Mot. at 18-20.  He concedes, for instance, that he uploaded
10  pirated ROMs—*which were identified as ROMs of Nintendo's videogames*—to
11  RomUniverse, and that he obtained those ROMs from other pirating websites.
12  Storman Dep. at 36:17-39:18; Knudson Decl., Ex. 7, p. 228.  Then, despite
13  receiving multiple notices that the content on RomUniverse infringed Nintendo's
14  copyrights, Mr. Storman continued to upload and distribute the Infringing ROMs.
15  Storman Dep. at 67:15-68:25; Knudson Decl. ¶ 7.  That is willful infringement.

16        Mr. Storman appears to be asserting that his infringement cannot be willful
17  as he never "verified the content" of the ROMs on his website.  Knowledge,
18  however, is not a requirement of willfulness; reckless disregard or willful blindness
19  is sufficient to establish willful infringement.  *Unicolors*, 853 F.3d at 991.  Thus,
20  even if true, Mr. Storman's decision to not investigate the ROMs, despite knowing
21  they were identified as ROMs of Nintendo's games, is both reckless and willful
22  blindness.  *See id.* ("Regardless of how difficult it may be to determine whether
23  particular designs have been registered with the Copyright Office, a party may act
24  recklessly by refusing, as a matter of policy, to even investigate or attempt to
25  determine whether particular designs are subject to copyright protections.").

26        Likewise, Mr. Storman's infringement of the Nintendo Trademarks was
27  willful.  He knew that the Nintendo Trademarks were used throughout
28  RomUniverse to categorize the pirated ROMs and even helped organize the ROMs

151641835.4

to make it "easier for the public to find specific ROMs[.]" Storman Dep. at 89:19-22; Knudson Decl., Ex. 5 p. 223. Such actions constitute willful infringement. *See Sega v. MAPHIA*, 948 F. Supp. at 936 (finding willful infringement where defendant allowed others to use Sega's mark and upload and download Sega's games, solicited others to upload games, and profited from operating the website).

Because Mr. Storman's infringement was willful, Nintendo is entitled to enhanced statutory damages for his copyright and trademark infringement, as well as its attorney's fees. And because Mr. Storman does not address the amount of damages requested by Nintendo nor Nintendo's entitlement to a permanent injunction, Nintendo's requested relief should be granted.

### E. Mr. Storman Does Not Dispute His Spoliation Or Address His Counterclaims

On September 25, 2020, the Court ordered Mr. Storman to preserve and produce (1) download data regarding the Infringing ROMs, and (2) relevant communications. Dkt. No. 45 ("September 25 Order"). The Court reminded Mr. Storman that he could be sanctioned for failing to comply with its order. *Id.* Despite this warning, Mr. Storman failed to timely produce the evidence, and subsequently admitted the evidence had been lost or destroyed. Storman Dep. at 75:18-79:8. He has no explanation for how this evidence was lost, nor does he address his spoliation in his brief. As such, Nintendo's requested relief—an adverse inference and monetary sanctions—should be granted.

Likewise, while Nintendo moved for summary judgment on any counterclaims asserted, Mr. Storman does not address these arguments. Any such claims should thus be dismissed.

### III. CONCLUSION

For the above reasons, Nintendo requests that Court grant summary judgment as to Nintendo's affirmative claims, dismiss any counterclaims articulated by Mr. Storman, and enter an adverse inference regarding Mr. Storman's spoliation.

151641835.4

DATED: March 4, 2021

**PERKINS COIE LLP**

By: */s/ Katherine M. Dugdale*
Katherine M. Dugdale
William C. Rava (appearing *pro hac vice*)
Christian W. Marcelo (appearing *pro hac vice*)

Attorneys for Plaintiff
NINTENDO OF AMERICA INC.