UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nintendo of America, Inc.,<br><br>    Plaintiff,<br>v.<br><br>Matthew Storman,<br><br>    Defendant. | Case No.: CV 19-7818-CBM-(RAOx)<br><br>**AMENDED ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

The matter before the Court is Plaintiff Nintendo of America Inc.'s ("Plaintiff's" or "Nintendo's") Motion for Summary Judgment (the "Motion"). (Dkt. No. 52.) The matter is fully briefed.

### I.  BACKGROUND

This action arises from pro se Defendant Matthew Storman's purported copying, distribution, reproduction, and offering of copies of Plaintiff's copyrighted video games through a website owned and operated by Defendant. On September 10, 2019, Nintendo filed the Complaint against Defendant Storman asserting three causes of action: (1) copyright infringement, 17 U.S.C. § 501; (2) federal trademark infringement, 15 U.S.C. §§ 1114, 1125(a); and (3) Unfair Competition, Cal. Bus. & Prof. Code § 17200. Nintendo moves for summary judgment on all of its claims and any purported counterclaims asserted by Defendant, and seeks statutory damages, attorneys' fees, and a permanent

1  injunction: a) enjoining Defendant from engaging in any further infringing
2  activity and b) ordering Defendant to transfer the websites he used for the
3  infringing conduct to Nintendo's control.

## II.  STATEMENT OF THE LAW

5  On a motion for summary judgment, the Court must determine whether,
6  viewing the evidence in the light most favorable to the nonmoving party, there are
7  any genuine issues of material fact.  *Simo v. Union of Needletrades, Indus. &*
8  *Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56.
9  Summary judgment against a party is appropriate when the pleadings, depositions,
10  answers to interrogatories, and admissions on file, together with the affidavits, if
11  any, show that there is no genuine issue as to any material fact and that the
12  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A
13  factual dispute is "material" only if it might affect the outcome of the suit under
14  governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An
15  issue is "genuine" only if there is a sufficient evidentiary basis on which a
16  reasonable jury could find for the non-moving party.  *Id*. at 249.  The evidence
17  presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  In judging
18  evidence at the summary judgment stage, the Court does not make credibility
19  determinations or weigh conflicting evidence.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*
20  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, "[t]he evidence of
21  the nonmovant is to be believed, and all justifiable inferences are to be drawn in
22  [the nonmovant's] favor."  *Anderson*, 477 U.S. at 255.  But the non-moving party
23  must come forward with more than "the mere existence of a scintilla of evidence."
24  *Id*. at 252.

## III.  DISCUSSION

26  **A.  Copyright Infringement**
27      **(1)  Direct Copyright Infringement**
28  "To establish a successful copyright infringement claim, a plaintiff must

show that he . . . owns the copyright and that defendant[s] copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership." *Unicolors, Inc. v. Urb. Outfitters, Inc.,* 853 F.3d 980, 988 (9th Cir. 2017). However, "[t]he presumptive validity of the certificate may be rebutted and defeated on summary judgment." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).

Nintendo filed copies of the certificates of registration issued by the U.S. Copyright Office for its works (i.e., video games and box art) (Knudson Decl. ¶ 4, Exs. 1 and 2), which raises a rebuttable presumption regarding Plaintiff's ownership and the validity of the copyrights. *See S.O.S., Inc*, 886 F.2d at 1085-86; *Unicolors*, 853 F.3d at 988. Moreover, Defendant testified at his deposition that he does not dispute Nintendo owns the copyrighted works. (Storman Depo. 63:25-64:11.)

As to the element of copying, Defendant responded to written interrogatories and testified during his deposition that he is the sole owner of the website romuniverse.com (Marcelo Decl., Ex. 9; Storman Depo. 15: 21-25). Defendant also testified at his deposition that he and/or his "admin" uploaded ROMs[1] of Nintendo's copyrighted works (the video games) onto his romuniverse.com website and those copies could be downloaded from his website (Storman Depo. 36:20-39:18, 87:25-89:4). Nintendo filed a declaration from Alicia Bell, an attorney retained by Nintendo to "gather evidence related to the distribution of copies of Plaintiff's video game software from the website located at www.romuniverse.com" website, who declares her firm went to Defendant's www.romuniverse.com website between June 12, 2019 and July 1, 2019 and

---

[1] A "ROM" is a "read-only memory" file or image. Here, Defendant and or his administrators loaded and distributed copies of ROMs Nintendo's copyrighted video games on Defendant's website.

downloaded copies of Nintendo's copyrighted works from the website. (Bell Decl. ¶¶ 1-12, Ex. 2.) As to Nintendo's copyrighted box art, Bell attaches screenshots of images of Nintendo's box art which appeared on Defendant's romuniverse.com website on the download page for the Nintendo video games. (*Id.* ¶ 9, Ex. 3.)

Defendant filed a declaration in opposition to the Motion wherein he declares that he "denies and disputes that he uploaded any files to said website and at no time did he verify the content of said ROM file" (Storman Decl. ¶ 8), which is directly contradictory to his sworn deposition testimony wherein he testified that he uploaded the ROM files onto his website. Under the "sham affidavit rule," Defendant "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). "This sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (internal quotation marks and citations omitted). Therefore, the Court strikes Defendant's declaration with respect to the copying of Nintendo's copyrighted works under the sham affidavit rule. *Id.* at 1081 ("[T]he district court's invocation of the sham affidavit rule to disregard the declaration [on summary judgment] was not an abuse of discretion."). Accordingly, disregarding Defendant's sham declaration which the Court has stricken, it is undisputed Defendant copied Nintendo's copyrighted video games by uploading copies onto his website. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction.").

Defendant also declares his website has been recognized by Nintendo as

having "service provider status." (Storman Decl. ¶ 10.) Under the Digital Millennium Copyright Act ("DMCA"), service providers are immune from copyright infringement for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools. 17 U.S.C. § 512; *Ellison v. Robertson*, 357 F.3d 1072, 1076–77 (9th Cir. 2004). The DMCA defines a service provider as "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received." 17 U.S.C. § 512(k). Defendant does not mention the DMCA, nor provide any evidence demonstrating his website constitutes a service provider under the DMCA. Moreover, the DMCA's safe harbors for protection from liability for copyright infringement only apply if the service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers;" and "accommodates and does not interfere with standard technical measures." 17 U.S.C. § 512(i). Defendant provides no evidence to support he has complied with the DMCA's notification and policy requirements in order to prove the DMCA's safe harbors for protection from liability for copyright infringement apply here. Defendant also fails to provide evidence showing 1) the infringing material was stored by Defendant "at the direction of a user," 2) Defendant did not "receive a financial benefit directly attributable to the infringing activity"; 3) Defendant had a designated DMCA agent during the infringement; and 4) the required information for DMCA notices was displayed on Defendant's romuniverse.com website, as required for protection under the DMCA's safe harbors provisions. 17 U.S.C. § 512(c).

Therefore, there is no genuine issue of material fact that Plaintiff owns the copyrighted works and Defendant copied the works. Accordingly, the Court grants summary judgment in favor of Plaintiff on its direct copyright infringement claim.

**(2) Contributory Copyright Infringement**

To prevail on a claim for contributory copyright infringement, Plaintiff must demonstrate Defendant: (1) knew of the direct infringement; and (2) . . . either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *see also Ellison*, 357 F.3d at 1077. "[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

Here, Bell declares the ROMs uploaded to Defendant's website were playable copies of Nintendo's copyrighted video games. (Bell Decl. ¶ 9, Ex. 2.) Moreover, Bell attached screenshots of the download pages on Defendant's website to her declaration, which showed the number of times the file had been downloaded from Defendant's website and demonstrate almost 50,000 downloads of the copies of Nintendo's copyrighted works from Defendant's website occurred before this lawsuit was filed. (*See id.* Ex. 3 at pp.9-142.) "[D]ownloading copyrighted material are infringing acts" because it "violates the copyright holder's . . . right to reproduction." *Columbia Pictures Indus., Inc.*, 710 F.3d at 1034. Therefore, there is no genuine issue of material fact that users of Defendant's website infringed Nintendo's copyrights by downloading copies of its copyrighted video games from Defendant's website.

Furthermore, Defendant testified at his deposition that his website "indicated" that copies of Nintendo's copyrighted video games were available for download on the website. (Storman Depo. 17:13-19.) Nintendo also submits a copy of a screenshot of Defendant's website, wherein the website states "best

romsite in the universe" and lists copies of ROM files of Nintendo's copyrighted video games for download. (Marcelo Decl., Ex. 7.) Moreover, Plaintiff filed a copy of a promotional advertisement from Defendant's website for purchase of a premium unlimited account for his website for access to "1000s of game roms, movies, isos and ebooks," "[i]ncluding [Nintendo] Switch, Wii, 3DS/DS, GBA and more Unlimited downloads for only $30." (*Id*. Ex. 16.) Defendant testified at his deposition that he used the promotional advertisement to promote premium memberships where users could have unlimited downloads of files, including copies of Nintendo's video games. (Storman Depo. 53:18-54:17.) Defendant further testified at his deposition that he and users of his RomUniverse.com website would receive notifications when new ROM files were uploaded to his website. (*Id*. at 73:23-74:2.)

Therefore, there is no genuine issue of material fact in dispute that Defendant knew users of its website were engaging in infringing conduct by downloading the copyrighted files, and that Defendant induced, caused, or materially contributed to the infringing conduct by advertising and making the files available for download on his website. *See Fonovisa*, 76 F.3d at 264 ("[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability."). Accordingly, the Court grants summary judgment in favor of Plaintiff on its contributory copyright infringement claim. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) (finding contributory infringement where defendant knew of availability of infringing files, assisted in accessing the files, and failed to block access to the files); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 932-33 (N.D. Cal. 1996) (granting summary judgment to plaintiff on contributory copyright infringement claim where it was undisputed the defendant provided the "site and facilities for the known infringing conduct," "actively solicited users to upload unauthorized games, and provided a road map…for easy identification of Sega games available

for downloading," and "had a policy of providing limited free downloading of games and thereafter selling downloading privileges to customers who had purchased copiers").

### (3) Vicarious Copyright Infringement

To prevail on a vicarious copyright infringement claim, Nintendo must prove Defendant: (1) enjoyed a direct financial benefit from the infringing activity of the direct infringer; and (2) declined to exercise the right and ability to supervise or control that infringing activity. *Ellison*, 357 F.3d at 1076. A "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers." *Id.* at 1078 (internal quotations and citations omitted). "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).

As discussed above, Defendant filed evidence demonstrating almost 50,000 downloads of the copies of Nintendo's copyrighted works from Defendant's website occurred before this lawsuit was filed (*see* Bell Decl. Ex. 3 at pp.9-142), and users of Defendant's website infringed on Nintendo's copyrights by downloading copies of the ROM files of Nintendo's copyrighted video games from Defendant's website. *See Columbia Pictures Indus., Inc.*, 710 F.3d at 1034 ("[D]ownloading copyrighted material are infringing acts" because it "violates the copyright holder's . . . right to reproduction."). Moreover, Defendant testified at his deposition that he offered users the ability to purchase a premium membership and lifetime membership to his website for a fee, which gave those membership users unlimited access to download ROM files from his website, and testified that his income was derived solely from his romuniverse.com website. (Storman Depo. 41:11-43:12, 53:18-54:17, 86:8-12.) Defendant also responded to written interrogatories and testified during his deposition that he is the sole owner of the website romuniverse.com (Marcelo Decl., Ex. 9; Storman Depo. 15: 21-25).

Defendant further testified at his deposition that he could block users from visiting his website, he could delete data available on his website, and he could change the ROM files that were available or not available on his website (Storman Depo. 40:19-41:7). Defendant also testified at his deposition that while he was aware Plaintiff claimed the majority of the content on Defendant's website infringed Nintendo's copyrights, he did not do anything after receiving the Complaint in this action to prevent anyone from adding or not adding files onto his website even though he had the ability to do so. (*Id*. at 95:3-96:13.)

Therefore, there is no genuine issue of material fact in dispute that Defendant received a direct financial benefit from the infringing acts of the users of his website who downloaded copies of Nintendo's copyrighted video games, and Defendant did not stop the infringing activity despite having knowledge of the infringement. *See Ellison*, 357 F.3d at 1076. Accordingly, the Court grants summary judgment in favor of Plaintiff on its vicarious copyright infringement claim.

### (4) Statutory Damages

Nintendo seeks statutory damages for Defendant's copyright infringement. Here, Plaintiff seeks $90,000 in statutory damages for each of the 49 copyrights infringed by Defendant, totaling $4,410,000.

Section 504(c)(1) of the Copyright Act "limits statutory damages awards to $150,000 for willful infringement and $30,000 for innocent infringement."[2] *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264 (9th Cir. 2021) (citing 17 U.S.C. § 504(c)(1), (2)). "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolor*, 853 F.3d at

---

[2] The minimum statutory damages that must be awarded is $750. 17 U.S.C. § 504(c)(1).

9

991. Moreover, "[t]he number of awards available under this provision depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Id.* (citation omitted). The district court has broad discretion in determining the amount of statutory damages. *Peer Int'l. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

Here, Defendant testified at his deposition that he and his "admin" uploaded copies of Nintendo's copyrighted videogames onto his website, and he received notices from Nintendo identifying several infringing ROMs that were uploaded on his website but failed to remove those files. (Storman Depo. 39:2-18, 67:15-68:25, 87:25-89:4.) Nintendo also submits undisputed evidence that additional copies of Nintendo's copyrighted videogames were uploaded to Defendant's website after this lawsuit was filed, as recently as September 2020. (Knudson Decl. ¶ 7.) Therefore, the Court finds Defendant's copyright infringement was willful based on Plaintiff's evidence. *See Leegin Creative Leather Prod., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 574-75 (9th Cir. 2009) (concluding the defendant's infringement was willful because "the evidence established that [the defendant] continued to sell infringing watches after receiving notice of [the plaintiff's] lawsuit").

Plaintiff contends it suffered lost revenue ranging between approximately $1,000,000 to $3,000,000 from Defendant's copyright infringement, and offers evidence that the retail price for its copyrighted video games ranges between $20 to $60 per game, and that there were approximately 50,000 downloads of Plaintiff's copyrighted video games at the time the lawsuit was filed. (Knudson Decl. ¶ 8; Bell Decl. Ex. 3.) Defendant testified at his deposition that his income for 2019 was approximately $30,000-36,000, his romuniverse.com website was his main source of income, his monthly income from his website was approximately $800 a month before he "shut it off," and his only source of income

1  at the time of his deposition was unemployment and food stamps. (Storman Depo.
2  75:14-17, 86:8-25.)
3        Therefore, considering Defendant's willful infringement, the Court finds
4  $35,000 statutory damages for each infringed copyright (for a total of $1,715,000
5  in statutory damages for the 49 infringed copyrights) would compensate Plaintiff
6  for its lost revenue and deter Defendant who is currently unemployed and has
7  already shut down the website.
8  **B.    Unfair Competition under California Bus. & Prof. Code § 17200**
9        Because Plaintiff is entitled to summary judgment on its copyright
10 infringement claim, the Court grants summary judgment in favor of Plaintiff on its
11 unfair competition claim under California Bus. & Prof. Code § 17200. *See*
12 *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, 332 F. App'x 387, 390
13 (9th Cir. 2009) ("[T]he district court properly granted summary judgment on
14 Brookhaven's unfair competition . . . claims because they were dependent upon
15 favorable resolution of the copyright . . . claims.").
16 **C.    Trademark Infringement**
17       Plaintiff's trademark infringement claim against Defendant is based on 1)
18 the display of Nintendo's trademarks when the copies of Nintendo's video games
19 are played after they are downloaded from Defendant's website (Compl. ¶ 56);
20 and 2) Defendant's use of Nintendo's trademarks on Defendant's website to
21 promote the sale of the "pirated games and to encourage visitors to download or
22 play unauthorized copies of [Nintendo'] copyrighted works" (*id*. ¶ 57).
23       **(1)    Plaintiff Has a Cognizable Trademark Infringement Claim**
24       The Court ordered the parties to address whether Plaintiff "has a cognizable
25 trademark infringement claim in light of *Dastar Corp. v. Twentieth Century Fox*
26 *Film Corp.*, 539 U.S. 23 (2003), and *Slep-Tone Entm't Corp. v. Wired for Sound*
27 *Karaoke & DJ Servs., LLC*, 845 F.3d 1246 (9th Cir. 2017)." (Dkt. No. 66.)
28 Plaintiff filed a response (Dkt. No. 67). Defendant did not respond to the Court's

order.

Plaintiff's trademark infringement claim based on the display of Nintendo's trademarks when copies of Nintendo's video games are played after they are downloaded from Defendant's website is "more accurately conceived of as attacking unauthorized copying" of Plaintiff's copyrighted works containing Plaintiff's marks, which is not a cognizable Lanham Act claim under *Dastar* and *Slep-Tone*. *See Slep-Tone*, 845 F.3d at 1250 (citing *Dastar*, 539 U.S. at 37). However, the Court finds Plaintiff has a cognizable trademark claim based on Defendant's use of Nintendo's trademarks on Defendant's website to promote the sale of the "pirated games and to encourage visitors to download or play unauthorized copies of [Nintendo's] copyrighted works." Accordingly, the Court analyzes whether Plaintiff prevails on its trademark infringement claim.

### (2) Ownership and Likelihood of Confusion

To prevail on its trademark infringement claim, Plaintiff must demonstrate: 1) ownership of a trademark; and 2) a likelihood of confusion. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014), *as amended* (Mar. 11, 2014). As to ownership, Nintendo filed copies of the trademark registrations for its trademarks. (Knudson Decl. ¶ 5, Ex. 3.) Defendant testified at his deposition that he does not dispute Nintendo owns the trademarks. (Storman Depo. 64:15-20.) In assessing a likelihood of confusion, courts typically analyze the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003): (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. However, "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination ...

because counterfeit marks are inherently confusing." *China Cent. Television v. Create New Tech. (HK) Ltd.*, 2015 WL 12732432, at *13 (C.D. Cal. Dec. 7, 2015). Here, Defendant's goods are unauthorized copies of Plaintiff's video games, and Plaintiff submits undisputed evidence that Defendant used Plaintiff's registered trademarks to display and promote Defendant's counterfeit goods. (Bell Decl. Ex. 3.) Accordingly, Plaintiff demonstrates a likelihood of confusion.

Therefore, there is no genuine dispute of material fact that Plaintiff owns the trademark and there is a likelihood of confusion. Accordingly, the Court grants summary judgment in favor of Plaintiff on its trademark infringement claim as to Defendant's use of Nintendo's trademarks on Defendant's website to promote the sale of unauthorized copies of Nintendo's copyrighted games.

**(3) Statutory Damages**

Plaintiff seeks $400,000 in statutory damages under the Lanham Act based on Defendant's infringement of 28 of Plaintiff's trademarks. The Lanham Act provides an award of statutory damages in cases involving the use of a counterfeit mark in connection with the sale or distribution of goods or services in an amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117.

Here, Plaintiff offers evidence Defendant displayed 28 of Plaintiff's marks on its website in offering illegal downloads of Nintendo's copyrighted games. (*See* Bell Decl. Ex. 3; Storman Depo. 86:19-22 (testifying Defendant agreed that Plaintiff's registered trademarks appeared on Defendant's website).) Therefore, Defendant used counterfeit marks of Plaintiff's registered trademarks. *See* 15 U.S.C. § 1116(d). As to willfulness, Plaintiff submits evidence demonstrating copies of Plaintiff's trademarks were displayed on Defendant's website to promote

the download of unauthorized copies of Plaintiff's games during this litigation. (Knudson Decl. ¶ 7.) Therefore, the evidence demonstrates Defendant's trademark infringement was willful. *See SAS v. Sawabeh Info. Servs. Co.*, 2015 WL 12763541, at *6 (C.D. Cal. June 22, 2015) (trademark infringement was willful because the defendant "permit[ed] counterfeiting activities to continue on the websites even after the commencement of the litigation").

While 15 U.S.C. § 1117 authorizes a maximum of $2,000,000 per counterfeit mark based on willful infringement of Plaintiff's trademarks, Plaintiff only requests $400,000 total in statutory damages for Defendant's willful trademark infringement. The Court finds the requested $400,000 in statutory damages, which equals approximately $14,286 in statutory damages for each of the 28 counterfeit marks, is appropriate. Accordingly, the Court awards Plaintiff $400,000 in statutory damages for Defendant's willful infringement of 28 of Plaintiff's trademarks.

### D.    Attorneys' Fees and Costs

Plaintiff requests attorneys' fees and costs under the Copyright Act and Lanham Act, and states it will submit a declaration in support of its fee request upon a "favorable ruling" on the instant Motion.

The Copyright Act permits the Court to award reasonable attorneys' fees and costs to the prevailing party. 17 U.S.C. § 505. Because the Court grants summary judgment in favor of Plaintiff on its copyright infringement claim, Plaintiff is entitled to reasonable attorneys' fees and costs under the Copyright Act. The Court therefore finds Plaintiff is the prevailing party for its copyright infringement claim. Plaintiff shall file a separate noticed motion for attorneys' fees supported by evidence of the fees necessarily and reasonably incurred in connection with Plaintiff's copyright infringement claim. Plaintiff shall file an application to tax costs with the clerk pursuant to Local Rule 54-2.

The Lanham Act authorizes an award of reasonable attorneys' fees to the

prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Court finds Plaintiff is the prevailing party under the Lanham Act. To the extent Plaintiff seeks attorneys' fees under the Lanham Act, Plaintiff shall file a noticed motion demonstrating this is an "exceptional case" warranting fees under the Lanham Act, supported by evidence of the fees necessarily and reasonably incurred in connection with Plaintiff's trademark infringement claim.

### E. Permanent Injunction

Plaintiff seeks a permanent injunction to enjoin Defendant from "future infringement" of Plaintiff's intellectual property rights. To obtain a permanent injunction, Plaintiff must demonstrate (1) irreparable injury; (2) an inadequate remedy at law; (3) the balance of hardships favors Plaintiff; and (4) it is in the public's interest to issue the injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

#### (1) Irreparable Harm

The Trademark Modernization Act, codified at 15 U.S.C. § 1116(a), provides:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . . .

Having found there is no genuine dispute of material fact that Plaintiff owns the trademarks and there is a likelihood of confusion, and because the Court grants summary judgment in favor of Plaintiff on its trademark infringement claim, Nintendo would be entitled to a rebuttable presumption of irreparable harm pursuant to the Trademark Modernization Act. Defendant does not submit evidence rebutting the presumption of irreparable harm. Accordingly, the Court

finds the irreparable harm factor favors issuance of a permanent injunction under the Lanham Act.

As to Plaintiff's copyright infringement claim, Plaintiff submits evidence of Defendant's inability to pay a lump sum payment of $3,100 in sanctions issued by the magistrate judge in this action in connection with Defendant's discovery violations, which demonstrates a high likelihood that Defendant will be unable to pay the $1,715,000 in statutory damages awarded by the Court for Defendant's copyright infringement. Moreover, Plaintiff's evidence demonstrates a threat of continued infringement based on Defendant's representations that he may relaunch his website which previously contained Plaintiff's copyrighted games. Accordingly, Plaintiff demonstrates irreparable harm warranting an injunction for Plaintiff's copyright infringement claim. *See WB Music Corp. v. Royce Int'l Broad. Corp.*, 2018 WL 2121819, at *3 (C.D. Cal. May 7, 2018), *aff'd sub nom. WB Music Corp. v. Stolz*, 814 F. App'x 286 (9th Cir. 2020); *Adobe Sys. Inc. v. Gorsline*, 2019 WL 7938445, at *3 (N.D. Cal. June 28, 2019); *Sugarfina, Inc. v. Sweitzer LLC*, 2018 WL 6265074, at *8 (C.D. Cal. Mar. 8, 2018); *Macnab v. Gahderi*, 2009 WL 10671026, at *5 (C.D. Cal. July 28, 2009).

**(2) Inadequate Remedy at Law**

Plaintiff submits evidence of representations by Defendant regarding relaunching his website and Defendant's inability to pay $3,100 in sanctions due to a lack of assets, which demonstrates a threat of continued infringement by Defendant exists and a high likelihood that Defendant will be unable to pay the statutory damages awarded by the Court. (Rava Decl. ¶ 2; Dkt. Nos. 69, 71, 72.) Therefore, Plaintiff demonstrates an adequate remedy at law exists as to Plaintiff's copyright and trademark infringement claims. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."); *cf. Berry v. Dillon*, 291 F. App'x 792, 795–

96 (9th Cir. 2008) (concluding the district court did not abuse its discretion in denying the plaintiff's request for a permanent injunction, reasoning the plaintiff "failed to show any threat of continuing infringement, and monetary damages would adequately compensate any past injury.").

### (3) Balance of Hardships

As to the balance of hardships, any hardship from enjoining Defendant from infringing Plaintiff's copyrights and trademark rights is irrelevant in determining whether to issue an injunction. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) ("[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.") (internal quotations and citations omitted). On the other hand, Plaintiff submits evidence regarding Defendant's representations that he is considering relaunching his website, which demonstrates Plaintiff will likely suffer hardship absent a permanent injunction. Therefore, this factor weighs in favor of the issuance of a permanent injunction.

### (4) Public Interest

The public interest is served by upholding rights under the Copyright Act and Lanham Act. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products."); *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005) ("[t]rademarks protect the public from confusion by accurately indicating the source of a product."); *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, LP*, 2014 WL 12560776, at *11 (C.D. Cal. July 21, 2014) ("As for public interest, it is of course in the public's interest that copyright rights . . . are enforced and not made meaningless."). Therefore, the public interest factor weigh in favor of a permanent injunction.

\* \* \*

Plaintiff demonstrates irreparable harm, an inadequate remedy at law exists, and the balance of hardships and the public interest weigh in favor of a permanent injunction. Accordingly, the Court grants Plaintiff's request for a permanent injunction.

**F.  Defendant's Counterclaim(s)**

Plaintiff also seeks dismissal of Defendant Storman's counterclaim(s). In Defendant's Answer to the Complaint (Dkt. No. 33), Defendant stated it was asserting a counterclaim against Nintendo. The nature of the counterclaim is unclear. Defendant pled that its counterclaim is "Plaintiff misrepresented their copyright, trademark and unfair competition claims against Defendant" based on Plaintiff's claim "that all material on Defendant's website was infringing in violation of 17 U.S.C. § 512 (f) and others," and "DOE, Nintendo German representative, may have acted contrary to Nintendo." (Dkt. No. 33 at 6-7.) These statements in Defendant's pleading do not state a counterclaim against Nintendo, but instead plead an alleged defense to Plaintiff's copyright, trademark and unfair competition claims. Plaintiff also submits deposition testimony from Defendant Storman, who testified he asserted counterclaims against Nintendo and that the "basis" for his counterclaims was "Nintendo has to prove that the actual files were theirs and actually – and the actual validity of the files were what Nintendo said that they were. Meaning that just because somebody uploaded a file and listed it as say, for example, Mario, doesn't necessarily mean that that file was playable. I think that was the basis." (Storman Depo. 90:16- 91:3.) Defendant's deposition testimony therefore demonstrates his purported "counterclaims" are his alleged defenses to Plaintiff's claims. Therefore, the Court dismisses any alleged counterclaims asserted by Defendant against Nintendo in his Answer (Dkt. No. 33) for failure to state a claim.

**G.  Spoilation**

Plaintiff argues that it seeks an "adverse inference" based on Defendant's

failure to preserve evidence consisting of (1) data from RomUniverse showing the number of times each Infringing ROM was downloaded, and (2) Mr. Storman's communications regarding Nintendo, RomUniverse, or this litigation. Specifically, Plaintiff requests that the Court "make an adverse inference that the destroyed evidence was unfavorable to Mr. Storman." The Court, however, need not make an adverse inference regarding such evidence because such evidence is unnecessary for the Court to rule on the instant Motion.

Alternatively, Nintendo argues awarding $9,300 in attorneys' fees expended in connection with Defendant's discovery violations as sanctions for Defendant's spoliation would be appropriate. However, Nintendo already filed a request for monetary sanctions of $9,300 in attorneys' fees expended in connection with Defendant's discovery violations before the Magistrate Judge, and the Magistrate Judge ordered Defendant to pay monetary sanctions of $3,100 pursuant to the parties' stipulation. (*See* Dkt. Nos. 51, 72.) Therefore, Nintendo's request for additional attorneys' fees as sanctions against Defendant in the instant Motion is denied.

## IV. CONCLUSION

Accordingly, the Court:

(1) **GRANTS** Plaintiff's Motion for Summary Judgment as to Plaintiff's copyright infringement, unfair competition and Lanham Act claims, and awards Plaintiff $1,715,000 in statutory damages under the Copyright Act and $400,000 in statutory damages under the Lanham Act for a total of $2,115,000 in statutory damages;

(2) **GRANTS** Plaintiff's request for a permanent injunction;

(3) **DISMISSES** Defendant's unspecified counterclaims for failure to state a claim; and

/ / /

/ / /

(4) **DENIES** Plaintiff's request for sanctions in the form of an "adverse inference and attorneys' fees" for Defendant's discovery violations.

**IT IS SO ORDERED.**

DATED: August 5, 2021.

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE